IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PAUL CHARLES BIRD SR.,            :

   Plaintiff,                    :

v.                                 :   Civil Action No. GLR-19-464

BANK OF NEW YORK MELLON            :
TRUST COMPANY, N.A., et al.,
                                   :
   Defendants.

## MEMORANDUM OPINION

THIS MATTER is before the Court on Bank of New York Mellon Trust Co., N.A. ("BONY") and Specialized Loan Servicing LLC's ("SLS") Motion to Dismiss and/or for Summary Judgment ("BONY/SLS Motion") (ECF No. 9); the Motion of Ocwen Loan Servicing, LLC, as Successor-in-Interest to Ocwen Federal Bank, FSB to Dismiss Plaintiff's Complaint ("Ocwen Motion") (ECF No. 12); and J.P. Morgan Chase Bank, N.A.'s ("JP Morgan Chase") Motion to Dismiss (ECF No. 23). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will grant the Motions.

### I.   BACKGROUND[1]

This Court is familiar with many of the facts underlying Plaintiff Paul C. Bird's Complaint from previous litigation, the relevant portion of which follows:

> On June 8, 1990, [Bird] and Brenda Lee Armstrong executed a promissory note ("Note") secured by a deed of trust ("Deed")

---

[1] Unless otherwise noted, the Court takes the following facts from Plaintiff Paul Charles Bird Sr.'s Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

in favor of Union Federal Savings Bank ("Union Federal") in the amount of $111,481.00 to finance the purchase of real property located at 3416 Hopkins Avenue, Baltimore County, Maryland 21227 (the "Subject Property"). The Deed was recorded among the Land Records of Baltimore County in Liber 8504, folio 533.

On August 26, 1996, Union Federal assigned the Note to the Secretary of the United States Department of Housing and Urban Development ("HUD"), and the assignment was recorded among the Land Records of Baltimore County at Liber 11787, folio 097. Subsequently, on October 27, 1997, an allonge[2] to the Note was executed by HUD to Ocwen Federal Bank, FSP ("Ocwen"). HUD assigned the Deed to Ocwen that same day, and the assignment was recorded among the Land Records of Baltimore County in Liber 12679, folio 507.

On November 15, 2000, Ocwen assigned the Deed to JP Morgan Chase Manhattan Bank as trustee c/o Residential Funding ("JP Morgan Chase"), and that assignment was recorded among the Land Records of Baltimore County at Liber 23237, folio 028. On that same day, Ocwen executed an allonge that contained an open indorsement. Subsequently, on December 20, 2000, Ocwen executed [the Lost Note Affidavit][3] to Homecomings Financial Network ("Homecomings")…

---

[2] An allonge is "a paper attached to a promissory note on which the parties write an indorsement, if there is no room on the [note] itself." Bird v. Specialized Loan Servicing LLC, No. CV RDB-16-3743, 2017 WL 1001257, at *1 n.2 (D.Md. Mar. 15, 2017) (first citing Milestone v. David, 555 S.E.2d 163 (Ga. 2001); then citing U.C.C. § 3–202(2)).

[3] A "lost note affidavit" is "an instrument used to establish a party's right to enforce a note even without possession of the original instrument." Specialized Loan Servicing LLC, 2017 WL 1001257, at *2 n.3 (citing Anderson v. Burson, 424 Md. 232, 252 (2011)). Under Maryland law, a lost note affidavit is required to verify the fact that the original note existed and that it has been lost despite a search "in the places where it was most likely to be found." Id. (citing Brashears v. State, 58 Md. 563 (1882)). "Maryland Courts routinely accept lost note affidavits to establish a party's right to enforce a promissory note." Id. (citing Howes v. Wells Fargo Bank, No. ELH-14-2814, 2015 WL 5836924, at *38 (D.Md. Sept. 30, 2015)).

2

Bird v. Specialized Loan Servicing LLC, No. CV RDB-16-3743, 2017 WL 1001257, at *1–2 (D.Md. Mar. 15, 2017) (internal citations and footnotes omitted). Because Bird had stopped making payments on the mortgage, Homecomings's appointee filed a foreclosure against Bird and Armstrong on January 10, 2002. (Compl. Ex. L ["Deed of Trust Analysis"] at 7, ECF No. 5-14). On February 6, 2003, Bird filed a Chapter 13 bankruptcy case in the U.S. Bankruptcy Court for the District of Maryland. See In re Bird, No. 03-52010-JS, 2007 WL 2684265 (Bankr. D.Md. Sept. 7, 2007). In that case, "Bird agreed that JP Morgan was the true claimant." Id. at *3. Rejecting Bird's arguments, the Bankruptcy Court concluded there was a clear chain of assignments and allonges and no evidence that Ocwen intended to split the Note from the Deed. Id. at *4. The Bankruptcy Court further concluded that Ocwen had validly assigned the Deed and the Note to JP Morgan Chase in November 2000 and that the Lost Note Affidavit was valid. Id.

On November 21, 2008, Bird filed three lawsuits in the Circuit Court for Baltimore County against JPMorgan Chase and Homecomings, among other defendants, for slander of title and intentional infliction of emotional distress, among other counts. See Bird v. GMAC Mortgage Corp., et al, Case No. 03-C-08-012446 (Cir.Ct.Balt.Cty filed Nov. 21, 2008). The Circuit Court dismissed the case, and Bird did not appeal. (BONY Mot. Dismiss Exs. 17, 18, ECF Nos. 9-17, 9-18).

In 2013, Bird filed a Chapter 7 bankruptcy case in U.S. Bankruptcy Court for the District of Maryland. See In re Bird, Case No. 13-28238-NVA. Bird argued that both the Deed and the Note were defective and sought to prevent foreclosure on the Subject Property and quiet title. (BONY Mot. Dismiss Ex. 19, ECF No. 9-20). The Bankruptcy

3

Court dismissed the case because Bird's challenge to the Deed and the right to enforce it was barred by res judicata. Id. at 3. This Court affirmed, (BONY Mot. Dismiss Ex. 19, ECF No. 9-20), and the United States Court of Appeals for the Fourth Circuit affirmed this Court, see 620 F.App'x 205 (4th Cir. Oct. 22, 2015). In that same case, SLS filed a motion for relief from stay so it could foreclose on the Subject Property. Specialized Loan Servicing LLC, 2017 WL 1001257, at *1. The Bankruptcy Court granted the motion, and this Court affirmed that ruling. Id. This Court noted that Bird's arguments that SLS "failed to provide a complete, unbroken chain of title, and failed to bring forward the original note prior to filing its motion" and "clearly failed to demonstrate any standing to seek relief from the stay" had already been rejected by the Bankruptcy Court, this Court, and the Fourth Circuit. Id. at *5. As a result, this Court concluded, such claims were res judicata. Id.

Further, in December 2013, SLS notified Bird that it would be servicing his loan. (BONY Mot. Ex. 1 ["SLS Notification Letter"] at 1–3, ECF No. 9-1). As part of informing Bird about his rights under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq. (2018), the SLS Notification Letter stated that "qualified written requests" ("QWR") needed to take a particular form and be sent to an address in Littleton, Colorado. (Id. at 3). On January 12, 2017, SLS received what Bird called a "qualified written request" at a different address in Highlands Ranch, Colorado.

On January 8, 2019, Bird sued BONY, SLS, Ocwen, Homecomings, Fairbanks Capital Management, Inc.,[4] Residential Funding Co., LLC, JP Morgan Chase, and Huntington National Bank, formerly Union Federal. (ECF Nos. 1-2, 5). The ten-count Complaint alleges against all Defendants: vacation of void assignments due to violation of "Maryland Code 3-309(a)(b)" (Count I); fraud in the concealment (Count 2); fraud in the inducement (Count 3); intentional infliction of emotional distress (Count 4); quiet title (Count 5); slander of title (Count 6); declaratory relief (Count 7); violations of the Truth in Lending Act ("TILA") (Count 8); violations of RESPA (Count 9); and recission of void contract (Count 10). (Id. at 1, ¶¶ 94–199). Defendants removed the case to this Court on February 15, 2019. (ECF No. 1).

On February 21, 2019, BONY and SLS filed their Motion to Dismiss and/or for Summary Judgment. (ECF No. 9). On March 6, 2019, Bird filed a "Motion to strike defendants' motion to dismiss, and Plaintiffs' Federal Rules of Civil Procedure, Rule 56 motion for summary judgment on stated and undisputed claim relying on stipulations of undisputed facts material to the settlement of this claim as admitted and confessed in defendants' Affidavits of Lost Note" ("First Bird Opposition and Motion"). (ECF No. 19). On March 15, BONY and SLS filed a Reply. (ECF No. 28).

On February 26, 2019, Ocwen filed its Motion of Ocwen Loan Servicing, LLC, as Successor-in-Interest to Ocwen Federal Bank, FSB to Dismiss Plaintiff's Complaint. (ECF No. 12). On March 14, 2019, Bird filed a "Motion to strike defendant Ocwen's motion to

---

[4] Bird filed a Line dismissing Fairbanks from the case on March 29, 2019, (see ECF No. 30), which the Court approved on April 1, 2019, (ECF No. 31).

dismiss, and Plaintiffs' Federal Rules of Civil Procedure, Rule 56 motion for summary judgment on stated and undisputed claim relying on stipulations of undisputed facts material to the settlement of this claim as admitted and confessed in defendants' Affidavits of Lost Note" ("Second Bird Opposition and Motion"). (ECF No. 27). On March 29, 2019, Ocwen filed a combined Opposition and Reply. (ECF No. 29).

On March 12, 2019, JP Morgan Chase filed its Motion to Dismiss. (ECF No. 23). On April 2, 2019, Bird filed "Motion to strike defendant JPMorgan Chase Bank's motion to dismiss, and Plaintiffs' Federal Rules of Civil Procedure, Rule 56 motion for summary judgment on stated and undisputed claim relying on stipulations of undisputed facts material to the settlement of this claim as admitted and confessed in defendants' Affidavits of Lost Note" ("Third Bird Opposition and Motion") (collectively, with Bird's First and Second Opposition and Motion, "Bird's Motions to Strike and for Summary Judgment").[5] (ECF No. 32). On April 8, 2019, JP Morgan Chase filed a Reply. (ECF No. 33).

---

[5] Federal Rule of Civil Procedure 12(f) is the only procedural rule addressing motions to strike, and it states that a court may, on its own or on motion made by a party, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f) (emphasis added). According to Rule 7(a), pleadings include the complaint, the answer to a complaint, counterclaim, crossclaim, or a reply to an answer. Thus, "[m]otions, briefs or memoranda, objections, or affidavits may not be attacked by the motion to strike." Muir v. Applied Integrated Techs., Inc., No. DKC 13-0808, 2013 WL 6200178, at *4 (D.Md. Nov. 26, 2013) (quoting Lowery v. Hoffman, 188 F.R.D. 651, 653 (M.D. Ala.1999)); see also MJ Harbor Hotel, LLC v. McCormick & Schmick Rest. Corp., 599 F.Supp.2d 612, 623 (D.Md. 2009). Rule 11 requires a party seeking sanctions to serve his motion on the opposing party before filing it with the Court. Fed.R.Civ.P. 11(c)(2).

Here, Bird seeks to strike Defendants' Motions, which do not constitute pleadings under Rule 7(a). Bird's Motions to Strike Defendants' Motions are, therefore, procedurally improper. Further, Bird has not separately served his requests for sanctions on BONY,

## II. DISCUSSION

### A. Standards of Review

#### 1. Motion to Dismiss

The purpose of a Rule 12(b)(6) motion is to "test[ ] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of America, N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th

---

SLS, and Ocwen, nor has he alleged any facts that rise to the level of sanctionable conduct. Accordingly, the Court will deny Bird's Motions to Strike, including his requests for Rule 11 sanctions.

7

Cir. 2012)), aff'd sub nom., Goss v. Bank of America, NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

### 2. Motion for Summary Judgment

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be

8

made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)). A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

**B.** **Analysis**

    **1.** **BONY and SLS's Motion**

BONY and SLS argue that Bird's claims are res judicata and that he fails to state a claim. Bird counters that the previous rulings from this Court, the Bankruptcy Court, and the Circuit Court for Baltimore County did not address his claim for a violation of "Maryland Commercial Code 3-309(a)(b)." The Court agrees with BONY and SLS.

The doctrine of res judicata precludes relitigation of claims. Allen v. McCurry, 449 U.S. 90, 94 (1980). The purpose of the doctrine is to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." Id. (citing Montana v. United States, 440 U.S. 147, 153 (1979)). Under Maryland law, res judicata "bars a party from re-litigating a claim that was decided or could have been decided in an original suit." Specialized Loan Servicing LLC, 2017 WL 1001257, at *1 (quoting Laurel Sand & Gravel Inc. v. Wilson, 519 F.3d 156, 161 (4th Cir. 2008). Res judicata applies when (1) "the parties in the present litigation are the same or in privity with the parties in the earlier dispute"; (2) "the claim presented in the current action is identical to the one determined in the prior adjudication"; and (3) "there has been a final judgment on the merits." Id. (quoting Laurel Sand & Gravel, 519 F.3d at 162). The Fourth Circuit applies the same res judicata standard. See Grausz v. Englander, 321 F.3d 467, 472 (2003).

A sister doctrine, collateral estoppel, provides that "once a court of competent jurisdiction actually and necessarily determines an issue, that determination remains conclusive in subsequent suits, based on a different cause of action but involving the same

parties, or privies, to the previous litigation." Weinberger v. Tucker, 510 F.3d 486, 491 (4th Cir. 2007) (citing Montana, 440 U.S. at 153). Collateral estoppel, therefore, "precludes relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate." Id. (quoting Va. Hosp. Ass'n v. Baliles, 830 F.2d 1308, 1311 (4th Cir. 1987)).

"Whether privity exists is determined on a case by case examination of the relationship and interests of the parties. The touchstone of privity for purposes of res judicata is that a party's interest is so identical with another that representation by one party is representation of the other's legal right." Shafer v. Hartman, No. CIV.A. PJM-08-577, 2008 WL 5500757, at *1 (D.Md. Mar. 31, 2008) (quoting Weinberger, 510 F.3d at 491). "Privity requires only an alignment of interests, not an exact identity of parties." Id. (citing Weinberger, 510 F.3d at 492).

Here, Bird's claims are either barred by res judicata because they are claims he brought—or could have brought—against BONY or SLS in prior litigation or collaterally estopped because they are based on the same core issues that were actually and necessarily determined in those prior cases. As this Court concluded in Specialized Loan Servicing:

> Judge James F. Schneider of the United States Bankruptcy Court for the District of Maryland has already determined that JP Morgan Chase has authority to enforce its security interest in the Subject Property. As successor to JP Morgan Chase, Appellee The Bank of New York Mellon is in privity with JP Morgan Chase.
>
> As discussed supra, Bird previously challenged the chain of title established by JP Morgan Chase in his 2003 Chapter 13

11

> Bankruptcy proceedings before Judge Schneider, who found that the record of the Note assignments showed a proper chain of title and established that JP Morgan Chase was a valid claimant. The issue was again addressed by Bankruptcy Chief Judge Alquist, who again confirmed lender JP Morgan Chase's right to execute on its security interest, stating that the issues "were fully and finally adjudicated in the Debtor's 2003 Bankruptcy Case." Judge Russell of this Court adopted Chief Judge Alquist's Findings and Conclusions, and dismissed [Bird]'s Amended Complaint with prejudice. The [Fourth Circuit] subsequently affirmed Judge Russell's Order. [Bird]'s present claim is based on the same arguments presented and adjudicated in these previous actions. For this reason, [Bird] is barred from re-litigating this claim.

2017 WL 1001257, at *5 (internal citations omitted). BONY and SLS were either parties in the previous litigation or in privy with those parties. All but one of Bird's claims in this case either have been raised in his previous cases or could have been raised in those cases. Id. at *1. Bird argues that he has not previously brought a claim under Section 3-309 of the Maryland Code, Md. Code Ann. Com. Law ["CL"] § 3-309 (West 2019), but he does not explain why he could not have brought such a claim before, and no reason is apparent to the Court. Further, the courts in which Bird has previously litigated against these parties or their privies have determined conclusively the core issues, including that the lenders in the chain of title have authority to enforce their security interest in the Subject Property and that the Lost Note Affidavit was valid. Finally, as noted in in Specialized Loan Servicing, they were final judgments on the merits. Accordingly, all of Bird's claims except Count IX under RESPA, are either res judicata or collaterally estopped.

Bird could not have brought his RESPA claim in his previous cases because the December 2017 letter to SLS that forms part of its basis post-dates them. For this Count

alone, the Court will convert BONY and SLS's Motion to a motion for summary judgment under Rule 56.[6] BONY and SLS argue that mailing his alleged QWR to a different address than the SLS notice required defeats Bird's RESPA claim. Bird counters that this discrepancy is not material. The Court agrees with BONY and SLS.

RESPA is a consumer protection statute that aims to curb "abusive practices" in the real estate settlement process and ensure "that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process." Robinson v. Nationstar Mortg. LLC, No. CV TDC-14-3667, 2019 WL 4261696, at *5 (D.Md. Sept. 9, 2019) (quoting 12 U.S.C. § 2601(a)). Under RESPA, a QWR is a written correspondence that: "(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief

---

[6] The Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005). Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To raise sufficiently the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d).
    Here, both requirements have been satisfied. BONY and SLS's Motion is captioned in the alternative as one for summary judgment, and Bird has not requested discovery via a Rule 56(d) affidavit.

of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). "If a borrower sends a QWR to a servicer of a federally related mortgage loan, and the servicer fails to adequately respond under the statute to the borrower's request, then the servicer faces liability for actual damages suffered by the borrower and for statutory damages if the plaintiff can show a pattern or practice of RESPA violations." Peters v. Bank of Am., N.A., No. 3:14-CV-513, 2015 WL 1259417, at *2 (E.D.Va. Mar. 18, 2015) (citing § 2605(e)–(f)). RESPA's implementing regulation, Regulation X, permits a loan servicer to "establish a separate and exclusive office and address for the receipt and handling of qualified written requests." Id. (quoting 24 C.F.R. § 3500.21(e)(1)). Establishing this separate address helps loan servicers to meet RESPA's requirements, and "[i]f a servicer establishes a designated QWR address, then the borrower must deliver its request to that office in order for the inquiry to be a qualified written request." Id. (quoting Roth v. CitiMortgage, Inc., 756 F.3d 178, 181 (2d Cir. 2014)). "Failure to send the [alleged] QWR to the designated address for the receipt and handling of QWRs does not trigger the servicer's duties under RESPA." Id. at 182 (quoting Berneike v. CitiMortgage, Inc., 708 F.3d 1141, 1149 (10th Cir. 2013)).

Here, Bird sent the correspondence he intended to be a QWR to an address different from that designated in the SLS Notification Letter. Bird neither disputes this fact nor offers any justification for treating his correspondence as a QWR under RESPA. As a result, Bird's letter did not qualify as a QWR and did not trigger SLS's duties under RESPA.

Accordingly, the Court will grant summary judgment in favor of BONY and SLS and against Bird as to Count IX.

In sum, the Court will grant BONY and SLS's Motion, dismissing Counts I-VIII and X and granting summary judgment in their favor and against Bird on Count IX.

### 2. JP Morgan Chase's Motion

JP Morgan Chase argues Bird's claims against it are also res judicata. Bird counters that the chain of title for the Subject Property is void, which means Defendants violated CL § 3-309(a), and that the previous courts did not have jurisdiction. The Court agrees with JP Morgan Chase.

Because the chain of title has been deemed valid by the Bankruptcy Court and this Court, because the other courts' jurisdiction has also been established, and for the same reasons Bird's claims against BONY and SLS fail, the Court will dismiss Bird's claims against JP Morgan Chase. As for Bird's RESPA claim, Bird has not stated a claim against JP Morgan Chase under RESPA because his RESPA-related allegations concern the alleged QWR he sent to SLS, not JP Morgan Chase, or pre-date JP Morgan Chase's involvement in Bird's loans by a decade.

As a result, the Court will grant JP Morgan Chase's Motion.

### 3. Ocwen's Motion

Ocwen argues Bird's claims are barred by res judicata or collateral estoppel as well as by the statutes of limitations,[7] and that Bird fails to state each claim. Using the same

---

[7] The Court need not address Ocwen's statute of limitations argument based on its conclusion regarding res judicata and collateral estoppel, but the Court would also conclude

15

language as he did in his response to JP Morgan's Motion, including several identical paragraphs, Bird counters that the chain of title regarding the Subject Property is "void ab initio" because the Note was lost. The Court agrees with Ocwen.

Here, Ocwen is in privity with the lender parties in the prior litigation because its interests are aligned with theirs. Shafer, 2008 WL 5500757, at *1. As discussed above, the Bankruptcy Court and this Court have made final determinations regarding the validity of the chain of title and the Lost Note Affidavit. Even though Bird brings some different claims in this litigation, they spring from the same core issues—the validity of the Lost

---

that Bird's claims against Ocwen are barred by the statutes of limitations. Under Maryland law, a civil action must be filed "within three years from the date it accrues unless another provision of the [Maryland] Code provides a different period of time within which an action shall be commenced." Md. Code Ann., Cts. & Jud. Proc. § 5-101 (West 2019). As Bird has cited no other Code provisions that would extend the statute of limitations on his state claims, the Court concludes that the statute of limitations for those claims is, at most, three years. The statute of limitations for Bird's federal law claims is also three years. See 15 U.S.C. § 1635(f) (2018) (three-year statute of limitations for TILA violations); 12 U.S.C. § 2614 (2018) (three-year statute of limitations for RESPA violations).

Under the discovery rule, a cause of action does not accrue until "the potential plaintiff either discovers his or her injury, or should have discovered it through the exercise of due diligence." Poole v. Coakley & Williams Constr., Inc., 31 A.3d 212, 236 (Md. 2011) (quoting MacBride v. Pishvaian, 937 A.2d 233, 238 (Md. 2007)). For the cause of action to accrue, the plaintiff "must have notice of the nature and cause of his or her injury." Frederick Rd. Ltd. P'ship v. Brown & Sturm, 756 A.2d 963, 973 (Md. 2000); Poole, 31 A.3d at 237. It is "[k]nowledge of facts, however, not actual knowledge of their legal significance" that starts the statutory clock. Moreland v. Aetna U.S. Healthcare, Inc., 831 A.2d 1091, 1096 (Md.Ct.Spec.App. 2003) (quoting Miller v. Pac. Shore Funding, 224 F.Supp.2d 977, 986–87 (D.Md. 2002)).

Here, as discussed above, Ocwen assigned the Deed to JP Morgan Chase on November 15, 2000 and, on December 20, 2000, Ocwen executed the Lost Note Affidavit to Homecomings. Bird was aware of these facts through the course of the prior litigation and therefore his claims against Ocwen accrued more than a decade ago, well more than three years ago. As a result, they are now barred by each claim's statute of limitations.

Note Affidavit and chain of title—which have been conclusively decided. Bird certainly had a full and fair opportunity to litigate those issues in the prior cases, and the results were not in his favor. Accordingly, the claims against Ocwen are barred by collateral estoppel for the same reasons the claims against BONY and SLS were barred by collateral estoppel or res judicata.[8]

4. **Bird's Motions to Strike and for Summary Judgment**

For the same reasons the Court has dismissed Bird's claims against BONY, SLS, JP Morgan, and Ocwen, the Court will deny Bird's Motion to the extent it seeks summary judgment regarding the Lost Note Affidavits.

---

[8] With respect to Bird's RESPA claim, Ocwen notes that Bird's December 2017 correspondence was to SLS, not Ocwen, and therefore cannot form the basis of a RESPA claim against Ocwen. Further, Bird's allegation that Defendants did not "issue a receipt" to Bird in connection with the Note's execution in 1990 does not pertain to Ocwen because Ocwen was not involved until 1997 when it was assigned the Deed. Bird does not respond to these arguments. As a result, the Court will dismiss Bird's RESPA claim as to Ocwen.

## III. CONCLUSION

For the foregoing reasons, the Court will grant BONY and SLS's Motion to Dismiss and/or for Summary Judgment (ECF No. 9); Motion of Ocwen Loan Servicing, LLC, as Successor-in-Interest to Ocwen Federal Bank, FSB to Dismiss Plaintiff's Complaint (ECF No. 12); and JP Morgan Chase's Motion to Dismiss (ECF No. 23). The Court will deny Bird's Motions to Strike and for Summary Judgment (ECF Nos. 19, 27, 32). The Court will also order Bird to show cause why the Complaint should not be dismissed as to the other Defendants, for whom the Court has no record of service. A separate Order follows. Entered this 30th day of September, 2019.

/s/
George L. Russell, III
United States District Judge